O

# United States District Court
# Central District of California

| | |
|---|---|
| GERALD KELLY, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SMS SYSTEMS MAINTENANCE SERVICES, INC.; DOES 1 through 50, inclusive,<br><br>　　　　　　Defendants. | Case № 2:18-CV-01819-ODW (JCx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [33]** |

## I.   INTRODUCTION

Plaintiff Gerald Kelly moves to certify a putative class in this action seeking relief for Defendant SMS Systems Maintenance Services, Inc.'s alleged violations of the California Labor Code, Industrial Welfare Commission Order No. 4-2001 ("Wage Order"), and the Business and Professions Code (the "Motion"). (Notice of Removal, Ex. 1 ("Compl.") ¶ 1, ECF. No. 1; Mot. for Class Certification ("Mot."), ECF No. 33.) Kelly alleges that SMS is liable to him and other similarly situated employees for various wage and hour violations. (Compl. ¶ 2; Mot. 1.)  For the following reasons, the Court **DENIES** Kelly's Motion.[1]  (ECF No. 33.)

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.  BACKGROUND

SMS provides computer and printer repair services in California and employs hourly field service technicians ("Technicians") to carry out the work. (Mot. 1.) In April 2012, SMS acquired a company for whom Kelly had worked as a field service technician since July 18, 2011. (Mot. 1–2.) After the acquisition, Kelly remained employed by SMS as a Technician until he was laid off around November 10, 2016. (*See* Mot. 2.) Notably, SMS requires Technicians to carry mobile devices through which SMS sends assignments and worksite addresses ("Tickets"). (Mot. 1.) Around December 2014, at the request of one of its clients, SMS began using a mobile application, ClickMobile, to monitor and record the completion of Tickets for that particular client. (Mot. 5–6; Opp'n to Mot. ("Opp'n") 4–5, ECF No. 37.) SMS instructed its Technicians to acknowledge receipt of Tickets within fifteen minutes and recommended that Technicians check ClickMobile for new Tickets every thirty minutes. (Mot. 6–7.)

On July 15, 2016, Kelly emailed one of SMS's regional service managers, John Marquez, to protest an interaction that Kelly had with his managing supervisor, Vinh "Vince" Huynh. (Decl. of David Spivak ("Spivak Decl."), ECF No. 33-3, Ex. 11.) Specifically, Kelly explained that he had acknowledged a particular Ticket *sixteen* minutes after receiving it, and after having spoken with Huynh, Kelly complained, "This is unethical treatment, it is micro management and it is becoming hostile with the threat of [I'm] going to write you up all the time.  I have an exemplary record and I'm not going to accept being treated as if I don't do my job." (Spivak Decl. Ex. 1.) Kelly continued, "I'm asking that this communication serve as a concern and that I will not except [sic] treatment as such that is not warranted by myself.  I have done nothing wrong." (Spivak Decl. Ex. 1.)

On July 18, 2016, Marquez, sent the following email to the sixty-eight Technicians, supervisors, and dispatchers who used ClickMobile to track Tickets (the "Marquez Email"):

> Team,
>
> I just want to be clear the process [sic] with whole team.
> - For any INCXXXXXX tickets 4 hours, & 8 hours.
> - If a tickets [sic] is not acknowledged within 15 Minutes, Supervisor will be calling for these INCXXXX tickets to the technicians.
> - Please note Amin [sic] team calls will continue for 2 hours tickets, & 4 hours after the ticket has been dispatched to the tech.
>
> Please note Acknowledged in click helps a lot, since is telling us tech is aware of ticket, & we don't need keep refreshing the screen to see, if the tech has Acknowledged the ticket. If the ticket does not get Acknowledged is indication we may have issue. We need to be proactive with the tickets.
>
> Team, I'm going to send this to the team, any issues let me know ...........ASAP

(Spivak Decl. Ex. 12; *see* Mot. 7.) Later that day, Kelly replied to all recipients of the Marquez Email asking how the instructions should apply in the event that Technicians were driving or in a location without cellular reception. (Spivak Decl. Exs. 12, 27.) Two other Technicians also replied to all recipients after Kelly's email to acknowledge that they understood the instructions in the Marquez Email, even though one of them seconded the questions Kelly had posed. (Spivak Decl. Ex. 27.)

On July 19, 2016, Kelly emailed Marquez and Huynh to inform them that the project on which he had worked that day had become complicated, and that he had "worked straight through [his] lunch all the way till [sic] 3:30pm." (Spivak Decl. Ex. 26.) Huynh replied on July 20, 2016, "Thanks for the updated [sic]. Gerald make sure you follow company policy to take lunch!" (Spivak Decl. Ex. 26.) Kelly replied, "I understand company policy completely. The issue I had with missing lunch, was all about not leaving this store down and unable to print anything . . . . I exercised my judgment based on not leaving this store crashed and providing 100% customer satisfaction." (Spivak Decl. Ex. 26.) Huynh replied again, stating, "Great that you understand the policy. As a Manager, I am the one that make those decision [sic]. Always take your lunch and breaks. So you must inform me if thing like that occur

[sic] in the future." (Spivak Decl. Ex. 26.) Kelly then confirmed, "No problem!" (Spivak Decl. Ex. 26.)

Then, on July 21, 2016, Kelly "replied" to the Marquez Email by sending an email to an unknown recipient,[2] complaining that the Marquez Email required Technicians "to check phone every 15 min" in "direct violation of meals and break laws." (Spivak Decl. Ex. 12.)

Eventually, Kelly initiated this action in Los Angeles County Superior Court on February 1, 2018, and SMS removed the case to this Court on March 5, 2018. (Notice of Removal, ECF. No. 1.) Based on allegations that SMS required Technicians to monitor ClickMobile and acknowledge Tickets within fifteen-minute and thirty-minute time windows, Kelly asserts seven causes of action against SMS on behalf of himself and the classes he seeks to represent: (1) failure to provide rest breaks in violation of California Labor Code sections 226.7 and 1198; (2) failure to provide meal periods in violation of California Labor Code sections 226.7, 512, and 1198; (3) failure to pay employees all wages for all hours worked in violation of California Labor Code sections 510, 1194, 1197, and 1198; (4) failure to provide accurate, written wage statements in violation of California Labor Code section 226; (5) waiting time penalties under California Labor Code sections 201–203; (6) unfair competition under California Business and Professions Code 17200; and (7) civil penalties under the California Private Attorneys General Act, California Labor Code sections 2698, *et seq*. (Compl. ¶¶ 18–82.)

Now, Kelly seeks to certify the following three classes:

**A.** **Technician Class.** All persons Defendant employed in California as hourly field technicians, at any time during the time period beginning March 28, 2013 and ending when final judgment is entered (the "Class Period").

---

[2] Defendant claims that Kelly sent this email to himself only. (Opp'n 6.) The copy of the email Kelly submits as evidence redacts all recipient information, and Kelly does not address this claim in his Reply. (*See* Spivak Decl. Ex. 12; Reply, ECF No. 42.)

4

    **B.**    **30-minute Monitoring Class:** All members of the Technician Class who Defendant expected to act on (run) work "tickets" on the ClickMobile application.

    **C.**    **15-minute Acknowledgment Class:** All members of the Technician Class subject to the rule requiring acknowledgments of repair tickets every 15 minutes (stated in the July 18, 2016 email from John Marquez, Ex. 12).

(Mot. 9.) The Motion is fully briefed. (*See* Opp'n; Reply.)

## III. REQUESTS FOR JUDICIAL NOTICE

Both parties submit Requests for Judicial Notice. (ECF Nos. 33-6, 38.) Kelly requests the Court take judicial notice of three documents: (1) Kelly's letter to the California Labor and Workforce Development Agency; (2) Kelly's Complaint filed in Los Angeles Superior Court; and (3) the November 2017 "Rest Periods/Lactation Accommodation" policy for the Department of Industrial Relations. (Kelly's Req. for Judicial Notice, ECF No. 33-6; *see also* Spivak Decl. Exs. 1, 2, 28.) SMS requests the Court take judicial notice of various documents related to Kelly's prior convictions. (SMS's Req. for Judicial Notice, ECF No. 38.)

The Court may take judicial notice of "fact[s] . . . not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This includes "matters of public record" that are not "subject to reasonable dispute." *Lee v. City of Los Angeles* 250 F.3d 668, 689 (9th Cir. 2001). Here, however, the Court does not rely on the proffered court documents to resolve the present Motion, nor would they affect the outcome. Thus, the Court **DENIES** both Requests for Judicial Notice as moot.

## IV. LEGAL STANDARD

Whether to grant class certification is within the discretion of the court and involves a two-step analysis. *Bateman v. Am. Multi–Cinema, Inc.,* 623 F.3d 708, 712 (9th Cir. 2010); *see* Fed. R. Civ. P. 23. The first step in deciding whether to certify a

class is to determine whether the plaintiff has established all four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Second, a party seeking class certification must meet one of the three criteria listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Failure to prove any one of Rule 23's requirements destroys the alleged class action." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 675 (S.D. Cal. 1999) (citing *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975)).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively . . . prove that . . . *in fact*" the Rule 23 criteria are met. *Dukes*, 564 U.S. at 350 (emphasis in original). This showing is not onerous: "a district court need only consider material sufficient to form a reasonable judgment on each Rule 23(a) requirement." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) (internal quotation marks omitted). Still, courts may certify a class only if they are "satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," which "cannot be helped." *Dukes*, 564 U.S. at 351. The Court considers the merits only to the extent that they overlap with the requirements of Rule 23 and "not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011); *see Dukes*, 564 U.S. at 350–52.

## V.   DISCUSSION

Because the issue of commonality is dispositive here, the Court turns directly to it. Commonality is required for class certification and is only satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has "been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis*, 657, F.3d at 981 (internal

quotation marks and brackets omitted). Nevertheless, "it is insufficient to merely allege any common question." *Id.* As the United States Supreme Court has explained, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original); *see Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) ("[M]erely showing that there are common questions of fact is not enough . . . .").

As explained below, the Court finds that a class-wide proceeding would not generate common answers apt to drive the resolution of this case. Kelly asserts there are at least fourteen predominant common questions uniting the proposed class. (Mot. 15–16; *see also* Compl. ¶ 13.) However, all of Kelly's proffered questions ultimately stem from whether Defendant's instructions, via the Marquez Email, prevented the Technicians from taking or being compensated for meal periods and rest breaks as required by California labor laws. (*See* Mot. 15–16.) As Kelly himself summarizes the issue:

> Defendant instructs each Technician to record an acknowledgement of each Ticket with an app on the device within 15 minutes of receipt and to check for new Tickets at 30-minute intervals. *Technician Kelly interprets these instructions to require vigilant device monitoring by the Technician that precludes the duty-free meal and rest periods California law provides*. In its defense, SMS interprets the instruction to be no more than a guideline that does not impede duty-free meal and rest breaks. An award of meal and rest break premium and overtime wages to any of the Technicians depends on which interpretation is correct.

(Mot. 1 (emphasis added).)

SMS contends that Kelly's case theory relies on his own subjective interpretation of SMS's instructions and that no other Technicians shared Kelly's interpretation, in part because SMS's official policies require Technicians to take meal

periods and rest breaks, not skip them. (Opp'n 12–19.) SMS insists there is no commonality because even if the class was certified, the Court would need to determine as a factual matter whether each individual class-member Technician also interpreted the Marquez Email in the same way that Kelly did. (Opp'n 14–17.) The Court agrees.

Kelly promises "[d]ocumentary proof common to all Technicians" to reinforce the validity of his interpretation that SMS required Technicians to work during meal and rest breaks—and he does submit over six-hundred pages of evidence—but Kelly's proffered evidence does not compel class certification. (Mot. 1; *see also* Spivak Decl. Exs. 1–38.) Kelly submits his own declaration, his own time records, redacted time records for six other putative class members, deposition testimony from some of SMS's managers, SMS employee handbooks, and a handful of emails—including the Marquez Email at the center of this dispute and emails from Kelly's supervisor reminding Kelly to take his lunch breaks per corporate policy. (Decl. of Gerald Kelly, ECF No. 33-5; Spivak Decl. Exs. 1–38.) The evidence fails to show, however, that other Technicians shared or had reason to share in Kelly's interpretation of SMS's job instructions as unlawfully requiring Technicians to work during meal and rest breaks.

Kelly relies heavily on the Marquez Email as if it were evidence of such an unlawful, uniform policy or practice, but the Marquez Email does not directly address meal periods or rest breaks. (Mot. 7; Reply 1–5, 7–10; *see* Spivak Decl. Ex. 12.) Kelly insists that the Marquez Email necessarily conflicts with SMS's written policies because it is *silent* as to whether Technicians must follow the instructions contained therein while they are off-the-clock. (Reply 8.) The Court disagrees. At best, the evidence shows "only that business pressures exist which *might* lead [Technicians] to work off-the-clock." *Koike v. Starbucks Corp.*, 378 F. App'x 659, 661 (9th Cir. 2010). To be sure, viewing Kelly's argument in a charitable light, the combination of circumstances evidenced here could conceivably create pressures or incentives for Technicians to work during meal and rest breaks. Regardless, "evidence of such

incentives alone does not establish a common issue for class certification, since it provides no common answer to the question of whether individual [Technicians] *yielded* to those incentives, despite [SMS]'s formal policy" to take regular meal and rest breaks. *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695, at *13 (N.D. Cal. Nov. 12, 2014).

Moreover, the overwhelming majority of Kelly's evidence tends to show that SMS's meal and rest break policies *did* comply with the law. SMS's 2015 and 2017 employee handbooks provide that "[a] typical workday would include eight working hours and an unpaid lunch break of one hour, subject to supervisor's approval." (Spivak Decl. Exs. 13, 20; *see* Mot. 4.) Furthermore, Kelly's own email exchange with his supervisor on July 20, 2016, shows that when he informed his supervisors that he had worked through his lunch break, they instructed him not to miss lunch periods without their approval because the decision to skip lunch breaks was not Kelly's to make under company policy. (Spivak Decl. Ex. 26.) Further yet, deposition testimony of John Marquez, submitted by Kelly, reflects that Marquez "told [Kelly] during . . . training sessions that he only had to make his best effort to acknowledge tickets when he [wa]s on the clock, and he didn't have to acknowledge tickets at all when he [wa]s at lunch." (Spivak Decl. Ex. 29 ("Dep. of John Marquez") 149:8–13.)

Additionally, SMS submits declarations from thirteen other Technicians, six of whom received the Marquez Email.[3] (Opp'n 2, 7–8; Decls. of Other Technicians, ECF Nos. 37-3–37-16.) Each of these declarations follows a common theme: the Technicians were aware of company policies, and supervisors reminded them to take

---

[3] Kelly objects to SMS's evidence and raises the same objections—that they are irrelevant, vague, ambiguous, conclusory, and lack foundation—for all the Technicians' declarations submitted by SMS. These declarations address issues germane to this action and are relevant in the Court's determination of whether commonality has been met. Contrary to Kelly's assertions, the declarations include when the Technicians began employment with SMS and their respective positions. (ECF. Nos. 37-3–37-16.) To the extent the Court relies on the evidence SMS submitted, Kelly's objections are **OVERRULED**.

breaks and to not skip meal periods. (*See e.g.*, Decl. of Ian DeWilde, ECF No. 37-6; Decl. of Thanh Nguyen, ECF No. 37-12; *see also* Decls. of Other Technicians.) These declarations exemplify the type of evidence that would be needed to determine the individual inquiries that would predominate this case if the Court were to certify the proposed class. Whereas Kelly claims to have interpreted SMS's instructions in such a way that he felt required to work during meal and rest breaks, the evidence shows that similar claims brought by other Technicians would first depend on each Technician's individual interpretations of SMS's instructions. "Thus, whether and why class members worked off-the-clock becomes less a question of common policy and more a matter of individualized inquiry." *Brewer*, 2014 WL 5877695, at *12 (denying class certification where "[t]he evidentiary record underscore[d] the lack of a unitary answer to liability questions arising from class members [working] after logging out").

In short, Kelly argues that an entire class of Technicians have claims against SMS based on Kelly's interpretation of SMS's job instructions. Yet he provides scant evidence that any SMS policy required all Technicians to work during meal or rest breaks and no evidence to suggest that any other Technicians believed that to be the case. In contrast, SMS's evidence—and, in fact, Kelly's own evidence—tends to show that Technicians were required to take timely meal periods and rest breaks per SMS's policies. Accordingly, the Court finds that individual questions, such as whether every other Technician interpreted the Marquez Email in the same manner as Kelly, predominate over the ostensibly common question of whether the Marquez Email objectively evidences an unlawful company policy. Kelly may prove yet that he was subjected to unlawful wage and hour practices by SMS; the Court does not reach such questions here. Notwithstanding the merits of Kelly's underlying claims, the evidence fails to show that any common question could produce a common answer as to whether all Technicians felt required to work during meal and rest breaks. Thus,

the Court finds that Kelly fails to establish commonality as required by Rule 23(a). *See Dukes*, 564 U.S. at 350; *Escalante*, 309 F.R.D. at 618.

## VI. CONCLUSION

In summary, the Court finds that Kelly fails to meet the commonality requirement for class certification under Rule 23(a). Thus, the Court need not consider whether the other requirements are met. *See Schwartz*, 183 F.R.D. at 675; *Rutledge*, 511 F.2d at 673. Kelly's Motion for Class Certification is **DENIED**.

**IT IS SO ORDERED.**

September 1, 2020

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**